IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PAULA K.,

                    Plaintiff,

          vs.

FRANK BISIGNANO, Commissioner of Social
Security,

                    Defendant.

**8:25CV34**

**MEMORANDUM AND ORDER ON
JUDICIAL REVIEW OF
COMMISSIONER'S DENIAL OF
BENEFITS**

Plaintiff Paula K.[1] seeks judicial review of the denial of her application for disability insurance benefits by defendant Commissioner of the Social Security Administration. Filing 1 at 2. Paula K. has moved for an order reversing the Commissioner's decision. Filing 9. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 15. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Paula K.'s motion to reverse.

## I.  INTRODUCTION

### A.  Procedural Background

Paula K. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., on April 21, 2021. Filing 7-2 at 18 (Administrative Record (AR) 17). Paula K. alleged an onset disability date of April 3, 2020, in her application. Filing 7-2 at 18 (AR 17). Paula K. later amended her alleged onset date to October 25, 2020, her fifty-fifth birthday. Filing 7-2 at 45 (AR 44). Paula K.'s claims were initially denied by the Social Security

---

[1] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

1

Administration (SSA) on June 23, 2022, and were denied again upon reconsideration on April 27, 2023. Filing 7-2 at 18 (AR 17).

Paula K. filed a written request for a hearing on May 5, 2023, pursuant to 20 C.F.R. § 404.929 *et seq.*, following the two denials. Filing 7-2 at 18 (AR 17). The Administrative Law Judge (ALJ) held a hearing to review the denial of Paula K.'s applications on August 31, 2023. Filing 7-2 at 18 (AR 17). On December 14, 2023, the ALJ issued an unfavorable decision in Paula K.'s case. Filing 7-2 at 15 (AR 14). Paula K. requested a review of the ALJ's decision, and on December 3, 2024, the Appeals Council issued an order denying her request for review. Filing 7-2 at 2 (AR 1). Paula K. filed this action seeking judicial review and reversal of the ALJ's decision to deny her disability benefits and supplemental security income, or in the alternative, to vacate and remand this matter for further proceedings. Filing 1 at 2.

### B. Factual Background

#### 1. *The Claimant and Her Alleged Disabilities*

Paula K. was fifty-four years old at the time of her original alleged disability onset date of April 3, 2020, classifying her as a "person closely approaching advanced age" pursuant to 20 C.F.R. § 404.1563(d). Filing 7-2 at 18 (AR 17). Paula K. was fifty-five years old at the time of the amended alleged disability onset date of October 25, 2020, classifying her as a person of advanced age pursuant to 20 C.F.R. § 404.1563. Filing 7-2 at 45 (AR 44). Paula K. is classified as having a high school education, which places her in the fourth—and highest—educational ability as listed under 20 C.F.R. § 404.1564. Filing 7-6 at 18 (AR 202). Paula K. lives with her husband of seventeen years who assists her with cooking and grocery shopping. Filing 7-6 at 60, 82 (AR 244, 266). Paula K. worked as a professional research consultant research associate until April 15, 2020. Filing 7-6 at 18, 85 (AR 202, 269). The ALJ determined Paula K. did not engage in substantial

gainful employment during the period from her initial alleged onset date of April 3, 2020, through her date last insured of March 31, 2022, pursuant to 20 C.F.R. § 404.1571 *et seq.* Filing 7-2 at 21 (AR 20). Paula K. alleged in her disability report the conditions that limit her ability to work are as follows: profound hearing loss, bipolar disorder, chronic intractable migraine without aura, neck injury, back injury, post-traumatic stress disorder, and fibromyalgia. Filing 7-6 at 17 (AR 201).

Paula K. avers two general bases in support of her motion for an order to reverse the Commissioner's decision. First, Paula K. alleges the ALJ erred in finding her mental impairments nonsevere. Filing 10 at 18–21. Second, Paula K. contends the ALJ did not articulate sufficient reasons for finding the medical opinions of her therapist, Ms. Carla Habrich, LMHP, not persuasive. Filing 10 at 21–24. The Court will provide a statement of the medical records and other evidence relevant to Paula K.'s challenges to the ALJ's decision with the purpose of providing a more focused and succinct discussion.

    2. *Medical Records and Evidence*

        a. Paula K.'s Psychological Symptoms

On September 30, 2020, Paula K. visited Dr. Nicholas Steier, M.D., in primary care for an annual physical exam. Filing 7-7 at 184 (AR 504). At the appointment with Dr. Steier, Paula K. complained of daily migraines. Filing 7-7 at 186 (AR 506). Dr. Steier refilled Paula K.'s Lexapro prescription intended to treat bipolar 1 disorder. Filing 7-7 at 185 (AR 505). It was noted in Paula K.'s file that she was diagnosed with bipolar 1 disorder around age thirty, and post-traumatic stress disorder (PTSD) in her mid-thirties. Filing 7-7 at 105 (AR 425). Paula K. later visited Dr. Karen Bremer, M.D., in neurology, on February 26, 2021, regarding Paula K.'s migraines. Filing 7-7 at 152 (AR 472). Dr. Bremer's notes from the visit stated that Paula K. has "comorbid PTSD and fibromyalgia which could result in increased symptoms." Filing 7-7 at 152 (AR 472).

3

Beginning on March 18, 2021, Paula K. regularly saw Ms. Carla Habrich, LMHP, at Charles Drew Health Center, Inc., for psychotherapy. Filing 7-7 at 88–141, 148–151, 237–315, 484–558 (AR 408–460, 468–471, 557–635, 804–878). On March 18, 2021, Paula K. had her initial visit with Ms. Habrich. Filing 7-7 at 138 (AR 458). The behavioral health visit notes indicate Paula K.'s history of present illness included bipolar disorder and depression. Filing 7-7 at 138 (AR 458). At the initial visit, Paula K. reported "functioning as very difficult." Filing 7-7 at 138 (AR 458). By Paula K.'s second appointment on March 30, 2021, Ms. Habrich noted while there was still difficulty in functioning, there was a decrease in Paula K.'s need for sleep, her depressed mood, and in her difficulty concentrating. Filing 7-7 at 135 (AR 455). However, the assessment plan notes for Paula K.'s visit with Ms. Habrich on April 6, 2021, list Paula K.'s bipolar 1 disorder, major depression, and post-traumatic stress disorder (PTSD) as chronic and unstable. Filing 7-7 at 133 (AR 453).

Paula K.'s assessments continued to shift between chronic and unstable, and chronic and stable between April and May of 2021. Filing 7-7 at 115, 118, 129–130 (AR 435, 438, 449–450). On May 11, 2021, Ms. Habrich noted that Paula K.'s functioning difficulty shifted to "somewhat difficult." Filing 7-7 at 113 (AR 433). Following this visit, on May 17, 2021, the assessment of Paula K.'s PTSD shifted to "chronic and controlled" while Paula K. reported her functioning level remained "somewhat difficult." Filing 7-7 at 109, 111 (AR 429, 431).

Paula K. saw Dr. Melissa O'Dell, M.D., on May 24, 2021, for an initial psychiatric evaluation. Filing 7-7 at 102 (AR 422). At the appointment, Paula K. discussed her meaningful activities of sitting on the "Board of Directors for Disability [R]ights of Nebraska." Filing 7-7 at 104 (AR 424). Paula K. also discussed her inability to attain a necessary headset for her previous work and the fact that she quit that job due to her "emotional and mental health issues." Filing 7-

4

7 at 104 (AR 424). Dr. O'Dell's notes from the visit state that Paula K. was previously prescribed Xanax for panic attacks. Filing 7-7 at 102 (AR 422). Paula K. listed "[r]educ[ing] the number of panic attacks and the duration" of the attacks she experienced as one of her goals throughout her therapy sessions. Filing 7-7 at 90, 94, 115, 150, 291, 304, 311 (AR 410, 414, 435, 470, 611, 624, 631). Paula K. discussed her childhood experiences during her visit with Dr. O'Dell and her need for therapy "due to many changes in her life and an increase in stress and depression." Filing 7-7 at 103 (AR 423). Dr. O'Dell reported an assessment and plan for Paula K.'s PTSD and noted that she had a low suspicion Paula K. was suffering from bipolar 1 disorder. Filing 7-7 at 107 (AR 427).

Paula K.'s PTSD remained "chronic and controlled" and her functioning was reported as "somewhat difficult" between May 17, 2021, and June 1, 2021, according to Ms. Habrich's notes. Filing 7-7 at 96, 98–99, 109, 111 (AR 416, 418–419, 429, 431). Despite Paula K.'s PTSD and bipolar status shifting to "chronic and unstable" and her functioning shifting to "very difficult" on June 8, 2021, Ms. Habrich reported improvement in Paula K.'s initial symptoms on the same day. Filing 7-7 at 92, 94 (AR 411, 414). On June 25, 2021, Paula K. completed her initial disability report and indicated that the medical conditions that limited her ability to work were profound hearing loss, bipolar disorder, chronic intractable migraine without aura, neck injury, back injury, PTSD, and fibromyalgia. Filing 7-6 at 17 (AR 201).

On July 20, 2021, Paula K. stated that she "feels good mentally" and that she was exercising her "breathing and mindfulness techniques." Filing 7-7 at 296 (AR 616). Paula K.'s bipolar status was noted as chronic and worsening a week later on July 26, 2021. Filing 7-7 at 295 (AR 615). On the other hand, Paula K.'s bipolar status was noted as chronic and controlled, her PTSD was chronic and improving, and her borderline personality disorder was listed as chronic and unstable

on August 16, 2021. Filing 7-7 at 292 (AR 612). On August 26, 2021, Paula K. saw Mark Darby, APRN, for an office visit in which he diagnosed borderline personality disorder, major depression, and fibromyalgia. Filing 7-7 at 282–286 (AR 602–606).

Between August 26, 2021, and December 28, 2021, whenever Paula K.'s bipolar status was listed on her Assessment and Plans, it is was listed as chronic and improving. Filing 7-7 at 243, 246, 249, 252, 261, 273, 276, 280, 551, 554 (AR 563, 566, 569, 572, 581, 593, 596, 600, 871, 874). On August 31, 2021, under Paula K.'s history of illness for depression, Ms. Habrich noted in Paula K.'s report that "self-affirmations were working" and that "her med adjustment is a good improvement." Filing 7-7 at 274 (AR 594). Paula K. additionally reported functioning as "not difficult at all" on September 21, 2021. Filing 7-7 at 259 (AR 579).

On October 5, 2021, Paula K. reported that she felt "manic over the weekend" but that she was "feeling much better now" on the date of her appointment. Filing 7-7 at 247 (AR 567). On December 28, 2021, under the health visit notes of Paula K.'s history of present illness regarding bipolar and anxiety, Paula K. reported that her symptoms had "improved over the last couple of weeks." Filing 7-7 at 549 (AR 869). Ms. Habrich's notes from Paula K.'s visit on January 25, 2022, state that Paula K. reported having had a "bipolar episode," but that she "us[ed] her coping skills and remain[ed] calm." Filing 7-7 at 542 (AR 862). The report from the visit on January 25, 2022, was the first time since August 26, 2021, that Paula K.'s bipolar status on the Assessment and Plans section of her therapy notes, when included, changed from chronic and improving, to chronic and unstable. Filing 7-7 at 243, 246, 249, 252, 261, 273, 276, 280, 544, 551, 554 (AR 563, 566, 569, 572, 581, 593, 596, 600, 864, 871, 874).

After Paula K. reported experiencing a "bipolar episode," Paula K.'s bipolar status listed under Ms. Habrich's Assessment and Plans section changed from "unstable and chronic" on

January 25, 2022, to "chronic and improving" at Paula K.'s next visit the following week on February 1, 2022. Filing 7-7 at 540, 542, 544 (AR 860, 862, 864). Paula K.'s bipolar status was subsequently listed as "chronic and improving" from February 1, 2022, through March 10, 2022, when included in her therapy notes. Filing 7-7 at 519, 522, 526, 529 (AR 839, 842, 846, 849). On February 22, 2022, Ms. Habrich's notes state that Paula K. reported "having a panic attack when she got her stitches removed from her finger." Filing 7-7 at 527 (AR 847). Ms. Habrich simultaneously listed Paula K.'s Mental Status Examination (MSE) as normal during the same visit. Filing 7-7 at 528–529 (AR 848–849).

Paula K. had an office visit with the Charles Drew Health Center, Inc., on February 2, 2022, for which the notes state she reported "doing fairly well since her last visit" and that she "believes her medication is helping her situation." Filing 7-7 at 534–535 (AR 854–855). Paula K. subsequently reported on February 15, 2022, that she was "going from 0 to 60" in an instant. Filing 7-7 at 531 (AR 851). Paula K.'s PTSD status varied in her therapy notes between chronic and improving and uncontrolled or unstable between February 15, 2022, and March 22, 2022. Filing 7-7 at 519, 522, 526, 529, 533 (AR 839, 842, 846, 849, 853).

There is a discrepancy in Paula K's file concerning her March 22, 2022, individual therapy visits. *See* Filing 7-7 at 511, 515 (AR 831, 835). On March 22, 2022, Ms. Habrich noted the status of Paula K.'s bipolar as chronic and controlled, and her PTSD and borderline personality disorder as chronic and unstable during her individual therapy session. Filing 7-7 at 515 (AR 835). However, on the same date of March 22, 2022, also during an individual therapy session, Dr. Jack Formanek listed Paula K.'s status for her bipolar disorder, PTSD, and borderline personality disorder all as chronic and improving. Filing 7-7 at 508 (AR 828). On March 29, 2022, Ms. Habrich noted chronic and improving for both Paula K.'s PTSD and bipolar disorder status. Filing 7-7 at

506 (AR 826). One week later on April 4, 2022, Paula K.'s status for PTSD, bipolar disorder, and borderline personality disorder were listed as "chronic and controlled." Filing 7-7 at 502 (AR 822). Throughout Paula K's therapy sessions, her mental status examinations were nearly all unremarkable and reported as normal. Filing 7-7 at 90–150, 242–311, 486–556 (AR 410 – 470, 562–631, 806–876).

b. Self and Lay Assessments of Paula K.'s Functionality

Paula K. completed a function report for use by the SSA in considering her application for disability benefits on July 5, 2021. Filing 7-6 at 33–41 (AR 217–225). Paula K. reported her hearing impairment as a condition that limits her ability to work. Filing 7-6 at 33 (AR 217). Paula K. explained that she requires a hearing aid compatible, noise cancelling headset, or a background noise cancelling setting on a headset to accommodate her hearing impairment. Filing 7-6 at 33 (AR 217). Paula K. also reported her ability to work is limited by her inability to sit and stand for long periods. Filing 7-6 at 33 (AR 217). Paula K. attributed her inability to sit and stand to her back, neck, and ACL knee repair. Filing 7-6 at 33 (AR 217). Finally, Paula K. addressed her migraines that she asserts play a role in her work limitations. Filing 7-6 at 33 (AR 217). Paula K. explained that when she is experiencing a migraine, she has a light and noise intolerance, trouble balancing, loss of words, nausea, and also muscle pain. Filing 7-6 at 33 (AR 217). When a migraine occurs, Paula K. reports she cannot follow directions and must sleep. Filing 7-6 at 33 (AR 217). Paula K. also noted she gets along well with authority figures. Filing 7-6 at 38 (AR 222). Further, Paula K. indicated her struggles with stress, panic attacks, and anxiety limit her ability to handle changes in routine. Filing 7-6 at 39 (AR 223).

Paula K. reported that she maintains the ability to do laundry, take care of dishes, gather trash and wheel it back after the bin has been emptied, remove snow from her porch, and mow the

lawn at times. Filing 7-6 at 35 (AR 219). Paula K. also reported being able to prepare her own meals and being able to shop in stores and online for clothes, art supplies, medication, and household supplies. Filing 7-6 at 35–36 (AR 219–20). Further, Paula K. highlighted the hobbies she enjoys partaking in daily and weekly. Filing 7-6 at 37 (AR 221). These hobbies included art projects, watching television, gardening, reading, writing literature, "citizen nature science, [and] webinars on disability issues." Filing 7-6 at 37 (AR 221).

On July 7, 2021, Paula K.'s husband, David, completed a third-party function report on behalf of Paula K. regarding limitations to her abilities. Filing 7-6 at 42–50 (AR 226–234). David confirmed that Paula K. has the ability to cook complex meals two to three times a week, and that she works in the garden, paints, feeds and brushes the cat, occasionally changes the litter box, does laundry and dishes, spends time weeding, and picks up the trash. Filing 7-6 at 44–45 (AR 228–229). David also reported that Paula K. spends between fifteen minutes to two hours shopping, one to two times each week. Filing 7-6 at 46 (AR 230). Finally, David noted that Paula K. does not react well to stress, which tends to heighten her anxiety and PTSD. Filing 7-6 at 49 (AR 232).

### c. Evaluations of Paula K.'s Medical History by State Consultants

On June 22, 2022, state consulting psychologist, Lee Branham, Ph.D., found Paula K.'s medically determinable mental impairments of bipolar disorder and PTSD as nonsevere, given Dr. Branham's review of the evidence. Filing 7-3 at 6–7 (AR 71–72). Dr. Branham concluded that Paula K.'s mental impairments did not precisely satisfy the diagnostic criteria of their respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 7-3 at 7 (AR 72). Dr. Branham noted that Paula K.'s nonsevere bipolar disorder and PTSD resulted in no limitations to her ability to understand, remember, apply information, interact with others, concentrate, persist, maintain pace, and adapt or manage oneself. Filing 7-3 at 7 (AR 72). After analyzing the evidence of record, Dr.

Branham concluded that while Paula K. has bipolar disorder and PTSD, her MSEs were "largely normal" and there were "no significant symptoms" found to be "impacting her daily living." Filing 7-3 at 6 (AR 71). Dr. Branham stated that Paula K.'s records do not indicate that her bipolar disorder or PTSD have "significant impact[s] on her ability to function." Filing 7-7 at 7 (AR 72).

On reconsideration of Paula K.'s initial SSA determination, a second state consulting psychologist, Rebecca Braymen, Ph.D., affirmed the initial findings by Dr. Branham and concluded that Paula K.'s mental impairments were nonsevere based on her review of the evidence of record. Filing 7-3 at 16 (AR 81). Dr. Braymen also concluded that Paula K.'s medically determinable mental impairments did not precisely satisfy the criteria of their respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 7-3 at 16 (AR 81).

d.    Paula K.'s Testimony at the ALJ Hearing

On August 31, 2023, the ALJ held a hearing to review the Commissioner's denial of Paula K.'s application for disability insurance benefits. Filing 7-2 at 41 (AR 40). Paula K. appeared at the hearing and was represented by her attorney. Filing 7-2 at 42–44 (AR 41–43). Paula K. testified that in 2019 and 2020 she worked as a professional research consultant doing surveys through outbound calls. Filing 7-2 at 46 (AR 45). This job was a sedentary vocation in that Paula K. spent most of her time on the phone and computer. Filing 7-2 at 46 (AR 45). When Paula K. was hired, she relayed to her employer that she would require a "handicapped accessible headset." Filing 7-2 at 47 (AR 46). Paula K. testified that during her work as a research consultant it "took three months to get [the] handicapped accessible headset." Filing 7-2 at 47 (AR 46). Paula K. mentioned that three months after receiving the headset it "shorted out." Filing 7-2 at 47 (AR 46). Paula K. experienced "sensory overload" as a result of being unable to hear and respond, coupled with the

noise of 200 other individuals in the same work area. Filing 7-2 at 47 (AR 46). The sensory overload produced panic attacks. Filing 7-2 at 47 (AR 46).

Paula K. began working from home following the headset malfunction. Filing 7-2 at 47 (AR 46). Paula K. still experienced issues with interference, troubleshooting, and panic attacks while working at home without the handicapped accessible headset. Filing 7-2 at 47–48 (AR 46–47). Paula K. testified that she began experiencing suicidal thoughts resulting from the issues with her survey work and eventually quit. Filing 7-2 at 48 (AR 47). Paula K. testified that her biggest problem with returning to a similar job would be her hearing problems. Filing 7-2 at 48–49 (AR 47–48). Paula K. also described her anxiety and PTSD and the triggers she would experience while in the workplace. Filing 7-2 at 51 (AR 50).

Paula K. testified to her general limitations outside of work regarding her inability to be on her feet or to sit for more than thirty minutes at a time, her back pain, and the irritations that "lifting, twisting, and bending" cause to her low back. Filing 7-2 at 49 (AR 48). Paula K. discussed her difficulties with concentration, extended focus, and forgetfulness. Filing 7-2 at 52 (AR 51). Paula K. also mentioned that she folds the laundry, cleans, grocery shops, and "sit[s] on the board of directors for Disability Rights of Nebraska." Filing 7-2 at 53–54 (AR 52–53).

### 3. The ALJ's Impairment Findings

An ALJ conducts a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ considers the following factors during that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). If the ALJ finds the claimant is not disabled at steps one, two, four, or five, or if the ALJ finds the claimant is disabled at steps three or five, the ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant not disabled if the claimant is working and that work is considered substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ determined Paula K. had not engaged in substantial gainful activity during the period from her alleged onset date of April 3, 2020, through her date last insured of March 31, 2022, which allowed the ALJ to proceed to the second step of the analysis. Filing 7-2 at 21 (AR 20).

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If an ALJ finds that the claimant's medically determinable impairment or combination of impairments is not severe, the claimant is not disabled. 20 C.F.R. § 404.1520(c). In this case, the ALJ determined that Paula K.'s mental impairments of depression and PTSD did not individually or collectively "cause more than minimal limitation in [her] ability to perform basic mental work activities and were therefore non-severe." Filing 7-2 at 22 (AR 21). Unlike Paula K.'s medically determinable mental impairments, the ALJ determined that Paula K. had severe impairments of

cervical degenerative disc disease (status post discectomy and disc arthroplasty), obesity, lumbar spondylosis, fibromyalgia, and sensorineural hearing loss, which permitted the ALJ to continue to step three. Filing 7-2 at 21 (AR 20).

At the third step of the process, the ALJ ascertains whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ found that none of Paula K.'s impairments, individually or in combination, are of a severity to meet the listed criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1, which prompted the ALJ to proceed to step four of the analysis. Filing 7-2 at 23 (AR 22).

    *4. The ALJ's RFC Findings*

At step four of the five-step analysis, the ALJ first determines the claimant's residual functional capacity (RFC), then assesses the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is her ability to do physical and mental work despite limitations from her impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger*, 390 F.3d at 591 (citing *Masterson*, 363 F.3d at 737); *see also* 20 C.F.R. § 404.1545(a).

The ALJ concluded the following pertaining to Paula K.'s RFC determination:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes or scaffolds; occasionally climb stairs or ramps; frequently balance; occasionally stoop, kneel, crouch and crawl; can occasionally work around hazards (such as unprotected heights and moving mechanical parts); and can work in an environment with no more than a "moderate" noise level (as defined by the SCO). Additionally, the claimant would need the use of a headset compatible with hearing aids in order to perform phone work.

Filing 7-2 at 25 (AR 24).

After the ALJ determines the claimant's RFC, the claimant's RFC is then compared to their past relevant work (PRW). 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). PRW is substantial gainful activity that the claimant performed within the past five years—or five years prior to the date disability must be established—and that lasted long enough for the claimant to learn to do the work. *See* 20 C.F.R. § 404.1565(a). If the claimant has the RFC to do her past relevant work the ALJ will conclude the claimant is not disabled and end the analysis, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f). Here, the ALJ determined that Paula K.'s PRW as a survey worker met the recency and duration requirements and rose "to the level of substantial gainful activity. . . ." Filing 7-2 at 31 (AR 30). The ALJ then concluded that Paula K. was able to perform PRW as a survey worker as actually performed and made no alternative step-five finding. Filing 7-2 at 32 (AR 31). Consequently, the ALJ determined that Paula K. "was not under a disability, as defined in the Social Security Act, at any time from April 3, 2020, the alleged onset date, through March 31, 2022, the date last insured (20 CFR 404.1520(f))." Filing 7-2 at 32 (AR 31).

## II. LEGAL ANALYSIS

### A. Standard of Review

After a claimant has sought review of an ALJ's decision by the Appeals Council, the claimant is entitled to judicial review of the ALJ's decision in federal district court. *Smith v. Berryhill*, 587 U.S. 471, 476 (2019); *see also* 42 U.S.C. § 405(g). On review, the district court determines "whether substantial evidence on the record as a whole supports the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (internal citation omitted)). Substantial evidence has been described as "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Under the substantial evidence standard, the district court will consider "evidence that detracts from the [ALJ's] decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citing *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)). The district court will not reverse an ALJ's decision "simply because some evidence supports a conclusion other than that reached by the [ALJ]." *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). The district court will affirm the ALJ's decision "[i]f, after reviewing the record, the [district] court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). Moreover, the district court will not reverse the ALJ's decision simply because the district court "would have come to a different

15

conclusion" on its own. *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (internal citations omitted)); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) ("We will not reverse the [ALJ's] decision 'merely because substantial evidence supports a contrary outcome.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000))). Stated another way, the district court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (internal citation omitted)). An ALJ's decision "is not outside the zone of choice because [the district] court might have reached a different conclusion if [it was] the initial factfinder." *Id.*

Additionally, the district court is tasked with determining whether the ALJ's decision "complies with the relevant legal standards." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations omitted)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)). In conducting its review of the ALJ's decision under the substantial evidence standard, the district court "must view the record in the light most favorable to [the ALJ's] determination." *Dols*, 931 F.3d at 748 (alteration in original) (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B.  Discussion

Paula K. asserts two grounds for reversing and remanding the ALJ's decision, as stated in the factual background, *supra*. First, Paula K. alleges the "ALJ erred in finding [Paula K.'s] mental impairments nonsevere." Filing 10 at 18–21. Second, Paula K. contends the ALJ "did not articulate sufficient reasons for finding Ms. Habrich's opinions not persuasive." Filing 10 at 21–24.

16

*1. The ALJ Properly Determined Plaintiff's Mental Impairments Are Not Severe*

Paula K. first asserts that the ALJ erred by failing to recognize her mental impairments as severe at step two of the ALJ's evaluation process. Filing 10 at 18. Paula K. asserts the record indicates "severe mental impairments and mental limitation[s]" that should have been included in her RFC. Filing 10 at 18. That is to say, Paula K. claims that the ALJ's failure to consider her severe mental impairments means that that ALJ's decision is not supported by substantial evidence on the record as a whole. Filing 10 at 18–21.

The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process. 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to [the ALJ] that you are blind or disabled."). At the second step of the evaluation process the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ will find an impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" include, but are not limited to, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b)(1). If the claimant does not have "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the ALJ will find she is not disabled. 20 C.F.R. § 404.1520(c).

The first inquiry is whether the ALJ erred in determining Paula K.'s mental impairments were nonsevere at step two specifically. At step two, the ALJ determined that Paula K. had severe physical impairments of cervical degenerative disc disease, obesity, lumbar spondylosis, fibromyalgia, and sensorineural hearing loss. Filing 7-2 at 21 (AR 20). On the other hand, the ALJ determined Paula K.'s mental impairments "considered singly and in combination" were not

17

severe at step two. Filing 7-2 at 22 (AR 21). The ALJ applied the appropriate standard in finding Paula K.'s mental impairments nonsevere at step two of the sequential evaluation as the ALJ concluded her mental impairments did not "cause more than minimal limitation in [Paula K.'s] ability to perform basic mental work activities. . . ." Filing 7-2 at 22 (AR 21); *see Page v. Astrue*, 484 F.3d 1040, 1042, 1044 (8th Cir. 2007) (affirming the ALJ's finding of nonsevere mental impairments and a combination of severe physical impairments at step two of the sequential evaluation); *see also Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) ("The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." (citing *Nguyen v. Chater*, 75 F.3d 429, 430–431 (8th Cir. 1996))).

The second inquiry is whether there is substantial evidence to support the ALJ's finding that Paula K.'s mental impairments were nonsevere. The ALJ's step-two analysis of Paula K.'s mental impairments began with her behavioral health therapy notes from March 18, 2021. Filing 7-2 at 22 (AR 21) (citing Filing 7-7 at 138 (AR 458)). At the appointment, Paula K. reported her ability to function as very difficult and discussed her depressed mood, anxiousness, and difficulties she faced with falling asleep, staying asleep, and concentrating. Filing 7-2 at 22 (AR 21) (citing Filing 7-7 at 138 (AR 458)). However, the ALJ highlighted Paula K.'s improved report following a period of treatment in which Paula K. stated that she "feels good mentally." Filing 7-2 at 22 (AR 21) (quoting Filing 7-7 at 296 (AR 616)). Paula K.'s brief in support of her motion highlights several periods when her MSEs reported depressed and anxious moods. Filing 10 at 19 (citing Filing 7-7 at 100, 111, 124 (AR 420, 431, 444)). On the other hand, the ALJ's opinion pointed to an unremarkable MSE on September 22, 2021. Filing 7-2 at 22 (AR 21) (citing Filing 7-7 at 257 (AR 577)). Additionally, the ALJ noted that Paula K. reported "doing fairly well," in February of

18

2022. Filing 7-2 at 22 (AR 21) (citing Filing 7-7 at 534 (AR 854)). The ALJ additionally supported

its opinion by pointing to Paula K.'s involvement "on a board and attending meetings." Filing 7-2

at 22 (AR 21) (citing Filing 7-8 at 267 (AR 1150)). The ALJ stated that Paula K. "working up to

her headset breaking is likewise evidence of her functional mental abilities." Filing 7-2 at 22 (AR

21) (citing Filing 7-2 at 48 (AR 47)); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) ("If, after

reviewing the record, the court finds it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's

decision." (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005))).

The next set of considerations the ALJ examined in making his finding were the "broad

functional areas of mental functioning set out in the disability regulations for evaluating mental

disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four

broad functional areas are known as the 'paragraph B' criteria." Filing 7-2 at 22 (AR 21). The ALJ

considered the functional areas of understanding, remembering, applying information, interacting

with others, concentrating, persisting, maintaining pace, and adapting or managing oneself. Filing

7-2 at 22–23 (AR 21–22). In evaluating each functional area, the ALJ determined that Paula K.

had either no limitation or a mild limitation at most. Filing 7-2 at 22–23 (AR 21–22).

In the first functional area of understanding, remembering, and applying information, the

ALJ noted that Paula K.'s MSEs throughout the record were reported as normal with "no deficits

in understanding, remembering, or applying information." Filing 7-2 at 22 (AR 21) (citing Filing

7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533,

537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–

853, 857, 870)). Additionally, Paula K. maintained the ability to "prepare simple meals (i.e., cereal,

frozen dinners, sandwiches), drive a car, shop on-line, pay her bills, count her change, handle a

savings account, use a checkbook or money orders, watch TV, do arts projects, read, write poetry, attend webinars, attend Eastern Star meetings, and attend writing meetings." Filing 7-2 at 22 (AR 21). Consequently, the ALJ determined Paula K. had no limitations in the first functional area. Filing 7-2 at 22 (AR 21).

The second functional area addresses Paula K.'s ability to interact with others. Filing 7-2 at 21 (AR 22). The ALJ determined that Paula K. had a mild limitation in this area. Filing 7-2 at 22 (AR 21). Paula K. reported "get[ting] along well" with authority figures, despite having problems getting along with others. Filing 7-6 at 37–38 (AR 221–222). The ALJ again relied on Paula K.'s MSEs being normal throughout the record with "no noted deficits in interacting with others." Filing 7-2 at 23 (AR 22) (citing Filing 7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533, 537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–853, 857, 870)). Paula K.'s ability to attend webinars and meetings, *inter alia*, and the fact that she worked until her headset broke, further indicated only a mild limitation in the second functional area. Filing 7-2 at 22 (citing Filing 7-6 at 37 (AR 221); 7-2 at 48 (AR 47)).

The ALJ determined Paula K. had mild limitations when evaluating the third functional area of concentrating, persisting, or maintaining pace. Filing 7-2 at 23 (AR 22). Paula K.'s abilities to drive, pay bills, paint, read, online shop, write poetry, and do art projects supported the ALJ's finding that she had mild limitations despite Paula K.'s reported trouble in this area. Filing 7-2 at 23 (AR 22) (citing Filing 7-6 at 34–37 (AR 218–221)). The ALJ highlighted that Paula K. worked up until her headset broke and found that this fact likewise demonstrated "evidence of her functional mental abilities, including her concentrating, persisting, or maintaining pace." Filing 7-2 at 23 (AR 22) (citing Filing 7-6 at 37 (AR 221); Filing 7-2 at 48 (AR 47)). Finally, the ALJ

considered Paula K.'s MSEs that reported "no deficits in concentrating, persisting, or maintaining pace" and were noted as normal throughout the record. Filing 7-2 at 23 (AR 22) (citing Filing 7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533, 537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–853, 857, 870)).

The final functional area is adapting or managing oneself. Filing 7-2 at 23 (AR 22). In this area, the ALJ found Paula K. has no limitation. Filing 7-2 at 23 (AR 22). To support his finding, the ALJ relied on Paula K.'s self-reported abilities to handle her care needs, do laundry, clean dishes, shop, drive, pay bills, manage finances, attend webinars, meetings, and support groups. Filing 7-2 at 23 (AR 22) (citing Filing 7-6 at 34–37 (AR 218–221)). Again, the ALJ relied on Paula K. working up until her headset broke to demonstrate her functional mental abilities. Filing 7-2 at 23 (AR 22) (citing Filing 7-2 at 48 (AR 47)). Finally, the ALJ pointed back to Paula K.'s MSEs being normal throughout the record with "no noted deficits in adapting or managing oneself." Filing 7-2 at 23 (AR 22) (citing Filing 7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533, 537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–853, 857, 870)).

The ALJ also evaluated the assessment of the State agency psychological consultant, Lee Branham, Ph.D. Filing 7-2 at 30 (AR 29). The ALJ relied on Dr. Branham's assessment that concluded Paula K. had "non severe depressive disorder and PTSD that resulted in no limitations in her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, or adapt or manage oneself." Filing 7-2 at 30 (AR 29) (citing Filing 7-3 at 5–7 (AR 70–72)). The ALJ noted that "Dr. Branham's assessment is supported by his review of the evidence as detailed in the record." Filing 7-2 at 30 (AR 29) (citing Filing 7-3 at 5–7 (AR 70–

72)). The ALJ emphasized that upon reconsideration, Dr. Branham's assessment was affirmed by state agency psychological consultant, Rebecca Braymen, Ph.D. Filing 7-2 at 30 (AR 29) (citing Filing 7-3 at 16 (AR 81)). The ALJ found the opinions of Dr. Branham and Dr. Braymen persuasive, as the opinions were consistent with the medical evidence of record (MER). Filing 7-2 at 30 (AR 29).

The evidence relied upon by the ALJ provides substantial evidence to support his opinion. Paula K. bore the burden of demonstrating the severity of her impairment at steps two through four. *See* 20 C.F.R. § 404.1512(a)(1); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the [ALJ] at step five." (quoting *Stormo v. Barnhart*, 337 F.3d 801, 806 (8th Cir. 2004))). "Despite [] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (citing *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). This Court's role is to "decide whether the [ALJ]'s findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).

The ALJ reasonably relied upon the opinions of highly qualified state experts. *See* 20 C.F.R. § 404.1513a ("The [ALJ] will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . ."). Paula K.'s mental impairments at most resulted in "mild" limitations in the functional areas and no more than minimal limitations in Paula K.'s "ability to do basic work activities." Filing 7-2 at 13 (AR 22) (citing 20 C.F.R. § 404.1520a(d)(1)). Thus, the ALJ's finding that Paula K.'s mental impairments were not severe is supported by substantial evidence.

22

2.  *The ALJ Properly Evaluated Ms. Habrich's Opinions*

In Paula K.'s final argument she asserts that the ALJ failed to "articulate sufficient reasons for finding Ms. Habrich's opinions not persuasive." Filing 10 at 21–24. Specifically, Paula K. alleges "the ALJ's finding that Ms. Habrich's opinions were not persuasive was not supported by substantial evidence." Filing 10 at 24. Paula K. asserts that the ALJ's conclusion—that Ms. Habrich's opinion "was not consistent with 'the MER that supports no more than minimal functional limitations (i.e. mental impairments) as demonstrated by MSE being unremarkable throughout the record. . .'"—ignores the depressive and anxious moods Paula K. historically experienced. Filing 10 at 23 (quoting Filing 7-2 at 30 (AR 29)). Paula K. contends that the ALJ's finding that Ms. Habrich's opinion was unpersuasive was "not supported by substantial evidence" and was harmful due to the mental limitations Paula K. faces that would prevent her from performing PRW. Filing 10 at 24.

The ALJ's conclusion that Ms. Habrich's opinion is unpersuasive is not erroneous and is supported by substantial evidence on the record as a whole. The ALJ is required to "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings" according to various factors. 20 C.F.R. § 404.1520c(b). The factors for consideration include supportability, consistency, relationship with the claimant, specialization, and others. 20 C.F.R. § 404.1520c(c). "The factors of supportability . . . and consistency . . . are the most important factors" to be considered when evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Thus, the ALJ is required to explain how he "considered the supportability and consistency" of a medical opinion in his decision. *Id.*

23

The Eighth Circuit Court of Appeals has stated that a "conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). "An ALJ properly discredits such a report, though, if it is unsupported by the medical record." *Id.* (citing *Stormo*, 377 F.3d at 805–06). Further, "[an] ALJ is not required to 'explicitly . . . reconcile every conflicting shred' of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). A court will "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir.2003)).

On August 29, 2023, Ms. Habrich proffered a medical opinion on Paula K.'s mental conditions, stating that her mental limitations were significant and would limit her ability to meet competitive standards in multiple areas. Filing 7-9 at 243–248 (AR 1794–1799). Ms. Habrich's opinion was supported by a form based on Paul K.'s treatment history. Filing 7-9 at 243–248 (AR 1794–1799). The ALJ correctly found Ms. Habrich's opinion was inconsistent with Paula K.'s unremarkable MSEs, which were noted throughout the record and which reflect minimal functional limitations. Filing 7-2 at 30 (AR 29) (citing Filing 7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533, 537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–853, 857, 870)). Further, Ms. Habrich's opinion stating significant mental limitations was inconsistent with and thus not supported by the MER that indicates minimal functional limitations. *See* Filing 7-7 at 534 (AR 854) (stating that on February 2, 2022, Paula K. reported "doing fairly well"); Filing 7-8 at 267

24

(AR 1150) (showing that in 2022, Paula K. was on a board and attended meetings); Filing 7-2 at 48 (AR 47) (demonstrating Paula K. worked up until the point of her headset breaking).

The ALJ fulfilled his responsibility to explain how he came to the conclusion of finding Ms. Habrich's opinion unpersuasive when he explained the lack of consistency and supportability for Ms. Habrich's opinion in the MER. Filing 7-2 at 30 (AR 29); *see* 20 C.F.R. § 404.1520c(b)(2) (stating that the ALJ "may, but [is] not required to, explain how [he] considered" the other factors). Nothing more was required of the ALJ in explaining his opinion. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding that an ALJ need not discuss other factors after considering the supportability and consistency of a treating physician's opinion (citing 20 C.F.R. § 404.1520c(b)(2))). Paula K.'s contention that she had greater functional limitations is unsupported by her MSEs that were unremarkable throughout the record. *See* Filing 7-7 at 240, 242–243, 252, 257, 486, 490, 493–494, 498, 505–506, 514, 522, 528–529, 532–533, 537, 550 (AR 560, 562–63, 572, 577, 806, 810, 813–814, 818, 825–826, 834, 842, 848–849, 852–853, 857, 870). Her contention is essentially a request that this Court reweigh the evidence. *See* Filing 10 at 23–24 (arguing that the MER demonstrates many mental limitations and that the ALJ placed too much emphasis on past statements by Paula K). "It is not the role of this court to reweigh the evidence presented to the ALJ. . . ." *Dols*, 931 F.3d at 746 (quoting *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Because Ms. Habrich's opinions regarding Paula K.'s mental limitations are inconsistent with and unsupported by the MER, the ALJ articulated sufficient reasons for finding the opinions of Ms. Habrich unpersuasive.

### 3.  Paula K. Did Not Challenge the Remainder of the ALJ's Determinations

Paula K. challenged the ALJ's failure to find her mental impairments severe at step two and the ALJ's failure to "articulate sufficient reasons for finding Ms. Habrich's opinions" as

unpersuasive. Filing 10 at 18, 21. However, Paula K. did not challenge the ALJ's determinations at the remaining steps of the analysis except to assert that the ALJ failed to include her mental impairments. Filing 10 at 18–21. As stated in this discussion, *supra*, the ALJ properly concluded Paula K.'s mental impairments were nonsevere at step two. Thus, the Court finds no reason to reject the ALJ's determinations in the remaining steps where the ALJ properly concluded Paula K. did not have severe mental impairments.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Paula Kipp is not disabled. Accordingly,

IT IS ORDERED that

1.      Paula K.'s Motion for an Order Reversing the Commissioner's Decision, Filing 9, is denied;

2.      Bisignano's Motion for an Order Affirming the Commissioner's Decision, Filing 15, is granted;

3.      The Commissioner's decision is affirmed;

4.      The Court will enter a separate judgment.

Dated this 30th day of October, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge

26